UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **PAY AS YOU GO, LLC,**<br><br>  Plaintiff,<br><br>  v.<br><br>**VERIZON COMMUNICATIONS, INC.,**<br><br>  Defendant. | **CASE NO. 2:24-cv-400**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pay As You Go, LLC, by and through its undersigned attorneys, files this Complaint for Patent Infringement against Defendant Verizon Communications, Inc. and alleges as follows:

### NATURE OF ACTION

1.  This is an action for infringement of United States Letters Patent No. 8,295,458 under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

### THE PARTIES

2.  Plaintiff Pay As You Go LLC ("PAYG") is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer

Ave Suite 500, Cheyenne, Wyoming 82001. PAYG is the assignee of all right, title, and interest in United States Patent Nos. 7,013,127, 8,068,810, and 8,295,458.

3. Verizon has business locations and employees working within this District in Texas.

## JURISDICTION

4. The claims in this action arise under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction at least because Defendant conducts substantial business in the State of Texas, including (i) having solicited business in the State of Texas, transacted business within the State of Texas, and/or attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed products and services into the stream of commerce and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District and/or induced others to commit acts of infringement within this District. The exercise of jurisdiction over Defendant would therefore not offend the traditional notions of fair play and substantial justice.

6. On information and belief, Defendant, directly and/or through one or more agents, affiliates, and/or intermediaries, has advertised and continues to advertise (including through websites), used, offered to sell, sold, distributed, and/or induced the sale and/or use of infringing products and services in the State of Texas and in this District. Defendant has, directly and/or through a distribution network, purposefully and voluntarily placed such products and services in

the stream of commerce via established channels knowing and expecting them to be purchased and used by consumers in the State of Texas and this District.

7. On information and belief, Defendant has committed acts of direct infringement in the State of Texas.

## VENUE

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in the State of Texas and in this district and has a regular and established place of business in the State of Texas and in this district.

## THE PATENT IN SUIT

9. On March 14, 2006, United States Letters Patent No. 8,295,458 (hereinafter "the '458 Patent"), entitled "SYSTEM AND METHODS FOR EMPLOYING 'PAY-AS-YOU-GO' SERVICES," was duly and legally issued by the United States Patent & Trademark Office. A copy of the '458 Patent is attached hereto as Exhibit 1.

10. PAYG is the current and sole owner of all rights, title and interest in the '458 Patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '458 Patent.

### Overview of the Technology

11. The '458 Patent relates to telecommunications services and methods that enable a user and/or other responsible party to make payments as the user uses the telecommunication services.

12. As described in the specification of the '458 Patent, it was known in the art of telecommunication services before the invention claimed in the '458 Patent to provide calling card accounts to customers. A customer would receive account information in the form of a personal identification number ("PIN") and a toll-free access number that allowed the customer to utilize

the account. Those accounts were generally one of two types: (1) a pre-paid account, which was an account with a pre-defined amount of usage paid for in advance by the customer; and (2) a usage-based account, which was an account that is billed on a periodic billing cycle according to usage during the billing period. Pre-paid wireless (cell phone) service was one example of this.

13. Prior to the '458 Patent, pre-paid wireless service enabled customers to utilize the convenience of cellular and digital communications by establishing a prepaid account with a wireless telecommunication vendor. Typically, prepaid wireless cards, each card corresponding to a wireless services account, were purchased in preset denominations, such as $20, $50 or $100, often from a limited number of locations. Each card provided the user with a specified amount of wireless calling dollars or minutes.

14. After the initial allocation was exhausted, the user could "recharge" or reload their wireless account, usually by calling a toll-free number, and either talking with a customer service representative or using an automated system to charge additional calling dollars or minutes to a credit card.

15. These prior art pre-paid systems were burdensome to both the user and the telecommunication service provider. Moreover, these prior art pre-paid systems generally required that the user have a current credit card with an available balance, which created a significant burden in and of itself to certain classes of user, such as individuals who lacked sufficient regular income, individuals with too much existing debt, individuals with poor credit histories, and individuals who lacked and/or were unable to obtain a social security number.

### The Patented Invention

16. A system and method for effecting payment for pay-as-you-go telecommunication services via a third-party are provided. The claimed method comprises: monitoring a user's use of

telecommunication services at regular time intervals; communicating results of the monitoring to the provider of the telecommunication services, who then processes the results and communicates those to the user; and receiving a payment from the user, wherein: (i) the payment is received from the user at a third-party point-of-sale together with an account identifier, (ii) data indicative of the payment transaction is received sale by the telecommunication services provider from the third party; and (iii) an amount of money equal to the payment is received by the telecommunications services provider from the third-party.

17. The systems and methods of the invention are an improvement over conventional systems and methods that allow a user to pay as the telecommunication services are being used (otherwise known as "pay-as-you-go"). Various embodiments of pay-as-you-go systems and methods are illustrated in FIG. 1 and FIG. 2 of the '458 Patent.

18. Unlike standard mobile phone calling plans that charged a set monthly fee for a specific amount of calls, pay-as-you-go calling plans only required the user to purchase calling minutes when they would like to make a call. This was a significant advantage to consumer-users who did not want to be bound by an annual, or even biannual, contract, as well as to consumer users who did not possess sufficient credit (or credit-worthiness) to qualify for such a contract. This latter group included not only individuals with bad credit ratings, but also hourly-wage earners, individuals under the age of 18, and individuals unable to obtain a social security number.

19. A significant drawback of prior art pay-as-you-go systems and methods, however, was the inability to add extra time or services after the initial purchase of the phone and time without a credit or debit card. Because of this, many prior art pay-as-you-go systems and methods were almost as bad as standard mobile phone calling plans for individuals with bad credit ratings,

hourly-wage earners, individuals under the age of 18, and individuals without social security numbers. Exhibit 1.

20. Such systems and methods were also less-than-desirable for individuals who wished to protect their private, personal confidential information and/or preserve their anonymity through cash-only transactions or the like. For all of those different groups of individuals, prior to the invention of the methods claimed in the '458 Patent, the only solution to the problem of running out of time was to purchase another pre-paid phone altogether—a "solution" which could end up being prohibitively expensive in the long term.

21. Unlike prior art pay-as-you-go systems and methods which required direct payment from a user to the telecommunications service provider via a credit or debit card in order to add time for further use, the methods of the invention claimed in the '458 Patent permit a user 10 to make payments via a third-party point-of-sale site. Such a third-party point-of-sale site may be a physical location, such as a gas station or convenience store equipped with an electronic point-of sale device, or a virtual location, such as a website or app like PayPal® or Venmo®.

22. While such payments can be made electronically, e.g., via credit card, debit card, check card or any other such means, including on-line banking, they do not have to be made electronically like the prior art systems required. Rather, payments according to the invention claimed in the '458 Patent can also be made in cash, i.e., the user 10 can make a payment with cash at a designated location 12, and the amount paid at the designated location 12 will credited to the user's account 50 to cover the services rendered in step 68 of FIG. 2. Exhibit 1.

23. To use a designated location 12 to make payment, a user 10 may be issued an account identifier 14, e.g., an individual account number, in step 62 of FIG. 2, that uniquely identifies that user 10. Such an account identifier 14 enables a user 10 to make a payment at the designated

location in step 64 of FIG. 2. As noted above, this may be done, e.g., via a point-of sale terminal 16, where a user's credit card or debit card is "swiped" both to identify the user 10 and to collect payment of a specified amount, or where a user physically inserts cash in the form of paper bills and/or metal coins and enters his/her account identifier via a pin pad or the like. The payment information is then relayed to the telecommunication services provider 18 in step 66 of FIG. 2. The designated location 12 can be any physical or virtual location that processes a credit or debit card and/or can accept cash, e.g., retail stores such as a dry cleaner, a drug store, a supermarket, or a convenience store, etc., and websites and mobile applications like PayPal®.  Exhibit 1.

### The Claims of the '458 Patent are Directed to Patentable Subject Matter

24. The inventions claimed in the '458 Patent include methods that enable a user of pay-as-you-go telecommunication services to make payments for those telecommunications services via a third-party point-of-sale.

25. The claimed inventions are directed to a solving a problem that existed in conventional telecommunications at the time.

26. Prior to the invention claimed in the '458 Patent, users of telecommunications services that did not have a credit card, debit card, and/or linkable bank account were generally unable to use "pay as you go" systems. This requirement presented a problem to users with bad credit ratings, hourly-wage earners, and individuals under the age of 18, as well as individuals who wished to protect their privacy and/or preserve their anonymity.

### The claimed inventions provide an unconventional solution to that problem

27. The methods claimed in the '458 Patent are directed to novel ways of permitting users of telecommunications services to purchase those services on an as-needed basis without needing a credit card, debit card or linkable bank account, and without having to disclose personal identifying

information. This represents a significant advantage to users with bad credit ratings, hourly-wage earners, individuals under the age of 18, and individuals without social security numbers, as well as individuals who wished to preserve their anonymity.

28. The inventive methods are exemplified by claim 1 of the '458 Patent, which is directed to a method for affecting payment of telecommunication services, comprising: monitoring a user's use of the telecommunication services at regular time intervals; communicating results of said monitoring to a telecommunication services provider, wherein said telecommunication services provider processes said results and communicates processed results to said user; and receiving a payment from the user, the payment obtained from a payment transaction wherein: a payment is received from the user at a point-of-sale together with an account identifier, data indicative of the payment transaction is received from the point-of-sale by the telecommunication services provider, and an amount of money equal to the amount of payment is received from a point-of-sale proprietor by the telecommunication services provider.

29. The claims are not directed to an abstract idea or law of nature, and cannot be performed by a human being.

30. The claims of the '458 Patent are not directed to an abstract idea or law of nature.

31. The claims of the '458 Patent neither describe nor claim a concept or generic method. Instead, the '458 Patent provides solutions to a specific and persistent problem that existed with conventional pay-as-you-go systems and methods, viz., how could certain users—including individuals with bad or no credit, hourly-wage earners, individuals under the age of 18, individuals without a social security number, and individuals who wished to maintain their privacy—continue to use a prepaid phone or similar device once the original time had expired and/or been consumed. The inventions claimed in the '458 Patent provide a real-world solution to that real-world problem.

32. The invention described in the claims of the '458 Patent enables users to add to a pre-paid phone or similar device after the initial purchase thereof without using a credit or debit card or bank account and without needing to reveal personal confidential information, such as an individual's name or social security number. The patented invention does this by enabling such users to provide payment to the telecommunications service provider through a third-party willing to accept forms of payment other than a credit or debit card, including virtual sites, like PayPal®, and brick-and-mortar businesses, like convenience stores and gas stations.

### *The claims do not preempt their field*

33. The claims of the '458 patent do not merely recite a generic way of affecting payment for pay-as-you-go telecommunications services. Rather, the claims of the '458 patent recite a particular way of effecting such payments via a third-party point of sale site.

34. Alternative ways exist and are known for a user to affect payment for pay-as-you-go telecommunications services, including the prior art method of submitting a credit or debit card directly to the provider of the telecommunications services.

### ACCUSED INSTRUMENTALITIES

35. Verizon ("Company") performs and/or induces others to perform a computer-implemented method for providing pay-as-you-go internet services to a user.

36. This element is infringed literally, or in the alternative, under the doctrine of equivalents.

37. As just one example, Company provides multiple data plans (150 GB, 100 GB, and 5 GB) for users and also provides a billing system where a user pays a fixed monthly amount for a fixed amount of data plus overage charges for any additional data ("pay-as-you-go internet services") used by the user, along with other charges such as activation fees, and upgrade fees.



*Figure 1* – Exhibit 1 at page 2.

38. By way of its infringing activities, Defendant has caused, and continues to cause, Plaintiff to suffer damages, and Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

39. Defendant's infringement of Plaintiff's rights under the patents-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

40. Additional costs and fees that a Court may award in the course of the dispute.

41. On information and belief, Defendant's customer-users purchase Defendant's services in blocks of data that can be used in a single month on the customer user's device.

42. On information and belief, Defendant monitors the amount of Defendant's telecommunications services used by each of Defendant's customer-users.

43. On information and belief, Defendant communicates this information to Defendant's customer-users.

44. On information and belief, Defendant's customer-user can choose to pay for additional blocks of data using a third-party payment service.

45. On information and belief, individuals using a third-party payment service are required to establish an identifying account with such third-party payment service.

46. On information and belief, when a third-party payment service receives a payment from one of Defendant's customer-users, that third-party payment service transmits the value of the payment to Defendant along with information sufficient to identify the customer-user that made the payment.

47. On information and belief, Defendant directs or controls its customer-users' use of its telecommunications service and means for affecting payment thereof.

## FIRST CAUSE OF ACTION

### (Infringement of the '458 Patent)

48. PAYG hereby repeats and re-alleges the allegations contained in paragraphs above herein as if fully set forth herein.

49. The '458 Patent is presumed valid under 35 U.S.C. § 282.

50. PAYG has complied with the requirements of 35 U.S.C. § 287, as have all prior owners of the '458 Patent.

51. Defendant's pay-as-you-go telecommunication services are covered by one or more claims of the '458 Patent and therefore infringe the '458 Patent as shown in Exhibit 1.

52. Defendant's direct infringement of the '458 Patent has injured and continues to injure PAYG and PAYG is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

53. Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER

57. By way of its infringing activities, Defendant has caused, and continues to cause, Plaintiff to suffer damages, and Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58. Defendant's infringement of Plaintiff's rights under the patents-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

59. Additional costs and fees that a Court may award in the course of the dispute.

Dated:  May 31, 2024

Respectfully Submitted,

*/s/ Randall Garteiser*
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
M. Scott Fuller
   Texas Bar No. 24036607
   rgarteiser@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**COUNSEL FOR PLAINTIFF**